# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 1:08CR506 |
| Plaintiff, ) | |
| ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | **OPINION AND ORDER** |
| ANTHONY L. VIOLA, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on the following Motions of Defendant Anthony L. Viola requesting a new trial:

    (1)    Defendant Anthony Viola's Motion for New Trial (ECF # 248);

    (2)    Motion for Extension of Time and Permission to Amend Defendant's Rule 33 Motion for New Trial (ECF # 249);

    (3)    Additional Evidence in Support of Defendant's Motion for new Trial and Request for Oral Hearing (ECF # 277);

    (4)    Motion for Extension of Time (ECF # 284);

    (5)    Additional Information in Support of Motion for New Trial (ECF #289);

    and

    (6)    Supplemental Motion for New Trial (ECF #328)

(collectively, the "Motions for a New Trial"). Mr. Viola was convicted by a jury of charges arising from mortgage fraud.

Mr. Viola has fallen far short of his burden to establish a right to a new trial.

1

Specifically, Mr. Viola has not demonstrated that, due to a pecuniary dispute, his counsel curtailed his defense so that he was prejudiced. He fails to: articulate what "new evidence" or "alternative theories" his defense counsel failed to pursue that would suggest that Mr. Viola did not receive effective assistance of counsel; specify what prejudice he suffered as a result of his attorneys' alleged failure to call eight witnesses; and establish the reasonable probability that, but for counsel's purported unprofessional errors, the result of the trial would have been different.

Mr. Viola also fails to set forth any evidence that counsel provided ineffective assistance by advising him not to testify in his own defense, despite Mr. Viola's belief that he may have been able to help himself by doing so. To the contrary, the evidence shows that, while Mr. Viola may have wished to testify (as do many – if not most – criminal defendants), he trusted and abided by his and his attorneys' strategic decision that he should not take the witness stand.

It is abundantly clear from the record that, despite the skillful and zealous representation of counsel, Mr. Viola was convicted by a jury on the overwhelming evidence of guilt. For all of these reasons, as are more fully explained below, the Motions for a New Trial are **DENIED. Sentencing in this matter is scheduled for Thursday, December 29 at 11:00 a.m.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Anthony L. Viola and six co-defendants were indicted by a grand jury on May 6, 2009 for a mortgage fraud scheme involving 34 properties in the Cleveland, Ohio area. The superseding indictment charged Mr. Viola with two counts of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and 34 counts of wire fraud, in violation of 18 U.S.C. § 1343.

The trial of the remaining defendants who did not enter into plea agreements – Mr. Viola, Uri Gofman, and Gennadiy Simkhovich – commenced on February 28, 2011. The jury found Mr.

Viola guilty on 35 of the 36 counts on April 1, 2011 (ECF # 241).

The scale and length of the trial reflected the complexity of the mortgage fraud scheme. The trial began only after several continuances at the defendants' request so that they could prepare their cases. The trial itself lasted approximately five weeks. During trial, voluminous exhibits were introduced. It is clear that defense counsel, including Mr. Viola's counsel Attorney Jay Milano, spent hundreds, if not thousands, of hours preparing for trial.

At trial, the government called 24 witnesses who had interactions and dealings with Mr. Viola. Several of the government's witnesses were co-defendants with Mr. Viola, or worked with Mr. Viola at his real estate company, Realty Corporation of America.

The witnesses that testified about interactions with Mr. Viola gave substantially similar testimony concerning his role in the mortgage fraud. Specifically, they testified concerning Mr. Viola's involvement in recruiting and convincing individuals to purchase houses owned or controlled by Mr. Gofman by promising that they could purchase these properties with no money down, and would receive money back at closing. Further, witnesses testified consistently that Mr. Viola, as the real estate agent, completed all of the purchase agreements for 33 of the 34 real estate transactions, and that these purchase agreements did not disclose that the sellers provided the down payment funds through supposed "gifts of equity", or that the buyers received cash back at closing.

Counsel for defendants, including Mr. Milano, conducted impressive and thorough cross-examinations of the government's witnesses. Defense counsel cross-examined these witnesses aggressively and extensively.[1]

---

[1] Counsel for Mr. Gofman and Mr. Viola worked under a joint defense agreement.

In addition to Mr. Viola's co-defendants and employees, the government called four "victim-lender" witnesses. Defense counsel once again cross-examined these witnesses in an aggressive and thorough manner. The cross-examinations lasted for days, putting the lenders on trial for failing to do due diligence sufficient to discover Mr. Viola's fraudulent activities. In essence, defense counsel zealously attempted to prove through cross that any penalties for fraud should be exacted against the lenders. Counsels' well-developed lines of defense included a theory that the lenders were aware of, participated in, and furthered the fraud when they sold the mortgage loans to Wall Street.

When the government rested, counsel for Mr. Gofman, acting also for Mr. Viola under the joint defense agreement, called four witnesses. These included an expert witness, who testified essentially that the defendants did not act criminally, but rather conducted business according to the way real estate transactions were done at the time.

Mr. Viola's counsel called one witness when Mr. Gofman rested. The witness, the owner of Transcontinental Lending Group ("TLG"), testified as to when Mr. Viola's branch of TLG officially opened. Mr. Viola rested after this testimony. Neither Mr. Viola nor Mr. Gofman testified in their own defense.

After more than two days of deliberations, the jury returned a guilty verdict against Mr. Viola on 35 of the 36 counts. Mr. Viola was acquitted on one count (Count 21) involving a property for which he did not complete the purchase agreement.

Following the verdict, Mr. Viola timely filed the instant Motions for a New Trial. On December 15, 2011, the Court held an evidentiary hearing at Mr. Viola's request. During the hearing, which lasted a full day, the Court heard testimony from several witnesses. Mr. Viola

called: Attorney Richard S. Koblentz, an expert in the law of legal ethics and professional responsibility; defense counsel Michael Goldberg (counsel for Mr. Gofman); defense counsel Craig Weintraub (counsel for Mr. Simkhovich); and defense counsel Mark Marein (co-counsel for Mr. Gofman). The government called Lois Colley, a private investigator with Colley Intelligence International ("Colley"), and defense counsel Joe Medici, who was retained by Mr. Viola to represent him at the criminal trial along with Mr. Milano. Neither Mr. Milano nor Mr. Viola testified.

Among other things, Mr. Viola's witnesses and Mr. Medici testified that Mr. Viola and Mr. Milano had a disagreement over pecuniary m atters. No witness testified that the disagreement had any effect on the quality of Mr. Milano's representation of Mr. Viola.

At the conclusion of the evidentiary hearing, the Court offered Mr. Viola and the government the opportunity to submit supplemental briefing on the Motions for a New Trial by December 21, 2011. The government filed a brief to supplement its initial response to the Motions for a New Trial. Mr. Viola did not file a supplemental brief after the evidentiary hearing. Thus, Mr. Viola's Motions for a New Trial are ripe for consideration.

## II. DISCUSSION

Mr. Viola has moved for a new trial under Federal Rule of Criminal Procedure 33, alleging that he was denied the affective assistance of counsel. Rule 33 allows the Court to grant a motion for a new trial in the "interest of justice." Rule 33 states:

> (a) **Defendant's Motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.
>
> (b) **Time to File.**

5

>   (1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
>
>   (2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed.. R. Crim. P. 33.

Rule 33 "does not define 'interest[ ] of justice' and the courts have had little success in trying to generalize its meaning." *U.S. v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989)). Nonetheless, from the body of Rule 33 case law, it is accepted that a new trial may be granted in the "interest of justice" upon a finding of ineffective assistance of counsel. *Munoz*, 605 F.3d at 381.

The Sixth Amendment provides a defendant with the right to counsel to protect the fundamental right to a fair trial. Therefore, the Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

Under *Strickland*, counsel's performance violates the Sixth Amendment only where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To meet this test, a defendant must show two things, that: (1) "counsel's representation fell below an objective standard of reasonableness", and (2) "counsel's performance [was] prejudicial to the defense...." *Id.* at 688, 692.

In reviewing the adequacy of counsel's performance under the first prong of a *Strickland*

analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The *Strickland* Court stated:

> Judicial scrutiny of counsel's performance *must be highly deferential*. It is *all too tempting for a defendant to second-guess counsel's assistance after conviction* or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689 (emphasis supplied). *See also Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-688).

Where, as here, the adequacy of counsel's pre-trial investigation is at issue, the Court held that strategic choices to forgo certain avenues of investigation are reasonable when supported by reasonable professional judgments. The Court stated:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. "[T]he defendant must overcome the presumption that, under the circumstances, [a] challenged action [or omission] might be considered sound trial strategy." *Id.* at 690 (internal quotations omitted).

In view of the deference to defense counsel mandated by the Supreme Court, and the assumption that counsel rendered adequate and reasonable assistance, a defendant asserting ineffective assistance must do more than make conclusory assertions that counsel's assistance was ineffective. Instead, the defendant must identify with specificity the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.

7

*Strickland*, 466 U.S. at 690.

Meanwhile, to establish prejudice under the second prong of a *Strickland* analysis, it is not enough for the defendant to argue merely that errors had some conceivable effect on the outcome of the proceeding. *Id.* at 693. A defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding *would have been different.*" *Id.* at 694 (emphasis supplied). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.* "When determining prejudice, [a court] must consider the errors of counsel in total, against the totality of the evidence in the case." *Stewart v. Wolfenbarger*, 468 F.3d 338, 361 (6th Cir.2006).

In the instant case, Mr. Viola claims that he received ineffective assistance of counsel for at least two reasons. *First,* Mr. Viola claims that a pecuniary dispute led to a conflict of interest with his counsel, Attorney Jay Milano. Mr. Viola claims that, as a result of the conflict of interest, Mr. Milano "scaled back" his defense of Mr. Viola. In particular, Mr. Viola claims that, for reasons revolving around money, Mr. Milano failed to obtain potentially exculpatory interview summaries and other materials amassed by private investigator Colley. According to Mr. Viola, this deliberate omission led to counsel's failure to discover "new evidence" and to pursue "alternative theories." Mr. Viola further claims that Mr. Milano failed to call eight witnesses in an effort to shorten the trial in order to safeguard counsel's own pecuniary interest.

*Second*, Mr. Viola argues that Mr. Milano forced him to relinquish his right to testify in his own defense, apparently as a form of retaliation related to the pecuniary dispute. Mr. Viola maintains that he would have taken the stand but for his counsel's forced prohibition against it.

### A. The Pecuniary Conflict Between Mr. Viola And Attorney Milano Did Not Lead To Ineffective Assistance of Counsel

8

Mr. Viola's claims of ineffective assistance must be examined under the two-pronged *Strickland* test. As discussed, Mr. Viola has the burden to establish both that: (1) Mr. Milano's actions were objectively unreasonable, and (2) Mr. Viola was prejudiced in some specific way by those actions. *Strickland*, 466 U.S. at 688, 692.

1. **No "Actual Conflict" Of Interest Under The Sixth Amendment Existed Between Mr. Viola And Defense Counsel**

The Court first addresses Mr. Viola's theory that the pecuniary dispute between Mr. Viola and Attorney Milano resulted in a "scaling back" of Mr. Viola's defense. At the hearing on Mr. Viola's Motions for a New Trial, Mr. Viola offered the significant testimony and the detailed report of Attorney Richard Koblentz, an expert in matters of legal ethics and professional responsibility under the Ohio Rules of Professional Conduct ("RPC"), to prove that an actual conflict of interest existed between Mr. Milano and Mr. Viola. Mr. Koblentz opined that a conflict of interest, as defined by the RPC 1.7, in fact existed between Mr. Viola and Attorney Milano before and during Mr. Viola's criminal trial.

In his detailed and extensive testimony, Mr. Koblentz discussed numerous written communications regarding fees sent from Attorney Milano to Mr. Viola during the time period preceding Mr. Viola's indictment, and up to and including the first week of trial. Mr. Koblentz testified that Mr. Milano continuously requested more money, and insisted that Mr. Viola ask his family for loans. According to Mr. Koblentz, Mr. Milano's requests for additional money were inconsistent with earlier communications that, while somewhat vague, appeared to set out either a flat fee or a definitive formula to calculate the fees ultimately owed.

Mr. Koblentz testified that a conflict of interest was created – if not before – when Mr. Milano sent Mr. Viola an email on the eve of the second week of trial which appeared to contain

a threat to curtail his efforts at trial if certain fees were not paid. Specifically, in an email from Mr. Milano to Mr. Viola at 9:37 a.m. on Sunday, March 6, 2011, Mr. Milano wrote in pertinent part:

> If you have raised the fees by Tuesday [March 8, 2011 and during trial] that is all that matters. *If not– then we will do the best we can under the changing circumstances.*

(Emphasis supplied.)

Later that day, on March 6, 2011 (the Sunday after the trial had already commenced and the night before they were scheduled to return to trial), Mr. Milano sent Mr. Viola multiple emails requesting money. In one email, Mr. Milano insisted that, "We still anticipate $25,000.00 in fees to be received by 5PM Tuesday March 8, 2011."

Following these emails, tensions between Mr. Milano and Mr. Viola boiled over on March 6, 2011 at Mr. Milano's law firm. Mr. Milano and Mr. Viola had a verbal altercation. Mr. Viola became so angry that he left and refused to return to prepare for trial the next day. Mr. Viola also refused to respond to Mr. Milano's multiple emails in which Mr. Milano insisted that he would give his full effort at trial, and requested Mr. Viola to affirm in writing that he still trusted Mr. Milano as his lawyer.

According to Mr. Koblentz, Mr. Milano potentially could have cured any conflict of interest at this point either by: (1) obtaining a written waiver from Mr. Viola; or (2) bringing the issue to the Court's attention. Mr. Milano did neither. However, Mr. Medici, co-defense counsel retained by Mr. Viola, testified at the hearing on the Motions for a New Trial that Mr. Viola verbally reaffirmed his trust in his defense attorneys at the courthouse on March 7, 2011, prior to

commencing the second week of the mortgage fraud trial.[2]

The Court finds Mr. Milano's conduct deeply troubling, whether or not Mr. Viola owed the money at issue. The Court agrees with Mr. Koblentz that Mr. Milano's demands were inappropriate and untimely, inferring that if Mr. Viola did not pay more money, he would face 36 criminal counts in an extremely complex mortgage fraud trial without the benefit of the full efforts of counsel.

Despite the disturbing nature of Mr. Milano's conduct, the Court cannot determine on the basis of the evidence presented whether an actual conflict of interest existed under the RPC. Mr. Koblentz's report and testimony, while detailed and extremely informative, reflect only Mr. Koblentz's interpretation of the documents, and his conversations with Mr. Viola. Mr. Koblentz did not discuss the matter with Mr. Milano prior to the hearing on Mr. Viola's Motions for a New Trial. Moreover, it appears that Mr. Koblentz, in his assessment of Mr. Milano's requests for additional funds, was not privy to enough information to fully consider the importance of several state court indictments against Mr. Viola that were filed following some of the initial fee discussions between Mr. Milano and Mr. Viola. Accordingly, the question of whether a conflict existed under the RPC is better left to the appropriate disciplinary body after a full presentation of the relevant evidence.

The Court need not decide whether there was a conflict of interest under the RPC to resolve Mr. Viola's ineffective assistance of counsel claims. A fee dispute does not, per se, create an actual conflict of interest. *Spencer v. Pratt*, 2009 WL 4884972, *15 (E.D. Mich. 2009).

---

[2]Mr. Medici's attorney-client relationship with Mr. Viola has not been called into question.

11

"Although a 'defendant's failure to pay fees may cause some divisiveness between attorney and client,' courts generally presume that counsel will subordinate his or her pecuniary interest and honor [] professional responsibility." *Id.* (internal citations omitted). Ineffective assistance of counsel claims based on fee disputes, such as the one here, are analyzed pursuant to the two-part *Strickland* test, and not the "actual conflict" presumption of prejudice established in *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980). *United States v. O'Neil*, 118 F.3d 65, 71 (2nd Cir. 1997); *see also United States v. Messina*, 131 F.3d 36, 41 (2nd Cir. 1997).

### 2. There Is No Evidence That Mr. Milano "Scaled Back" Mr. Viola's Defense

Here, there is absolutely no evidence that Mr. Milano "scaled back" his defense of Mr. Viola, or that any strategic decisions were made other than on the basis of reasoned professional judgment. Mr. Viola has failed to draw the Court's attention to any specific evidence tending to show that any part of Mr. Milano's representation was unreasonable, or that Mr. Viola suffered any prejudice as a result of counsel's actions.

Indeed, Mr. Viola's assertions contradict the Court's own observations. The Court witnessed Mr. Milano's extensive efforts to represent Mr. Viola from the time the indictment was filed, through closing arguments at trial. Mr. Milano aggressively pursued massive amounts of discovery, including voluminous materials related to a purported mortgage fraud scheme in North Carolina. Indeed, defense counsel who testified at the hearing on the Motions for a New Trial stated that Mr. Milano devoted an extraordinary amount of time and resources to pretrial discovery, the scope of which they had never before experienced, and filing pretrial motions on behalf of his client. It is abundantly clear that all counsel, including Mr. Milano, spent hundreds – if not thousands – of hours preparing for trial.

12

Moreover, at the lengthy and arduous trial, Mr. Milano aggressively questioned the government's witnesses to develop the defense's theories, and objected to many of the government's lines of inquiry. There is no evidence to suggest that Mr. Milano's decision to call only one witness was based on anything other than well-reasoned trial strategy. After approximately five long weeks of trial, Mr. Milano thoroughly summarized the evidence and defenses during a well-executed closing argument.[3]

The Court did not observe any inadequacies or lack of effort on the part of the defense. Indeed, consistent with the Court's observations, the defense counsel who testified at the hearing on Mr. Viola's Motions for a New Trial uniformly testified that Mr. Milano did not scale back his defense of Mr. Viola. To the contrary, Mr. Milano spent an enormous amount time and effort preparing the defense in this complex mortgage fraud case, and he executed the defense with great skill.

    a.    **Mr. Viola – Not Mr. Milano – Was Responsible To Obtain The Colley Investigative Materials**

Mr. Viola's claim that Mr. Milano failed to obtain materials related to an initial investigation conducted by private investigator Colley is entirely inadequate to prove that Mr. Milano's defense was rendered ineffective. Mr. Viola apparently claims that, because of the pecuniary dispute, Mr. Milano refused to pay Ms. Colley to obtain the materials.

The testimony at the evidentiary hearing contradicted Mr. Viola's claim. At the hearing, Ms. Colley testified that her client was Mr. Viola, not Mr. Milano. Mr. Viola signed an agreement to pay her fees, and Ohio private investigators consider the person who pays the fees

---

[3]Mr. Milano's wife and daughter attended the closing arguments. It seems unlikely that Mr. Milano would have invited his family to witness a deliberately scaled back performance.

13

to be the client. The government introduced in evidence checks signed by Mr. Viola to demonstrate that Mr. Viola indeed paid Ms. Colley's fees, except for an initial sum that was paid by Mr. Milano, who referred Mr. Viola to Colley.

Ms. Colley testified that, at one point, she amassed an outstanding balance of approximately $9,000.00 for work performed, which Mr. Viola failed to pay, despite Ms. Colley's repeated invoices and personal reminders to Mr. Viola, and Mr. Viola's repeated promises to pay. In view of the outstanding balance (which to date Mr. Viola has not paid), Ms. Colley did not provide Mr. Viola with some unfinished and unedited work. Thus, according to the uncontroverted record, any failure to obtain Ms. Colley's materials falls squarely on the shoulders of Mr. Viola – not Mr. Milano.[4]

### b. The Colley Investigative Materials Do Not Constitute "New Evidence" That May Give Rise To An Ineffective Assistance Of Counsel Claim

Even if Mr. Milano had been the one responsible to obtain Ms. Colley's materials, the failure to do so does not amount to ineffective assistance. A review of Mr. Viola's Motions for a New Trial, and the evidence presented at the hearing, shows that Mr. Viola has not set forth any specific "new evidence" contained in the Colley materials that can be a valid basis for an ineffective assistance of counsel claim.

---

[4]Mr. Viola's new defense counsel explored on the cross examination of Ms. Colley the possibility that Mr. Milano was in fact Ms. Colley's client. He emphasized a Colley Investigations matter intake form which listed Mr. Milano under the heading "Client." Ms. Colley explained that Mr. Milano was listed as the client to prevent her clerical staff from sending any communications to Realty Corporation of America, Mr. Viola's employer, thereby violating the investigator-client privilege recognized under Ohio law. Although Ms. Colley kept both Mr. Viola and Mr. Milano appraised of the progress of the investigation, she was not concerned about privilege issues because she understood that Mr. Viola could take advantage of an attorney-client privilege where Mr. Milano was concerned.

14

As Mr. Viola's new counsel cites in his supplemental brief (ECF # 328, p. 2), "newly discovered evidence" that can be the basis for an ineffective assistance claim "does not include new legal theories or new interpretations of the legal significance of the evidence." *United States v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991). "An attempt to relitigate the case on a new theory is not considered newly discovered evidence" but rather is a "newly discovered issue of law." *United States v. Coker*, 23 Fed. Appx. 411, 412 (6th Cir. 2001). Mr. Viola correctly states that he must show that the "new evidence": (1) was "discovered *after trial*", and (2) would "likely produce an acquittal if the case was retried." *United States v. Turns*, 198 F.3d 584, 586-587 (emphasis supplied). Mr. Viola cannot make either showing.

To begin, Mr. Viola cannot show that the Colley materials contained evidence "discovered *after trial*." Ms. Colley testified that she verbally appraised Mr. Viola of every aspect of her investigation, including facts and the names of potential witnesses, regardless of whether she placed the information in writing. She further testified that Mr. Viola was extremely involved in the investigation, and thus was aware of all of the information contained in the materials not turned over as a result of Mr. Viola's failure to pay her bill. Accordingly, the Colley materials did not contain any "new evidence" discovered post trial that could be the basis for an ineffective assistance claim.[5]

Further, given that Mr. Viola was already aware of the information contained in the Colley materials, it cannot be said that Mr. Milano was unreasonable to have not obtained those materials. It is unclear how redundant information would have aided Mr. Viola's defense, let

---

[5]Ms. Colley testified that she did not uncover any new witnesses or information not known to Mr. Viola and Mr. Milano that she did not share.

15

alone resulted in a different outcome at trial. Thus, Mr. Viola has failed to satisfy the first prong of *Strickland*.

Moreover, Mr. Viola has neglected to provide any clue as to what specific "new evidence" the Colley materials actually contained, let alone how that evidence would likely produce an acquittal if the case was retried. As such, Mr. Viola has failed to show that he was prejudiced in any way by the failure to obtain the Colley materials, as is required for a new trial under the second prong of *Strickland*.

### c. Mr. Viola Has Not Asserted A Specific Alternate Theory Of Defense That Counsel Failed To Pursue As Is Required To Prove An Ineffective Assistance Of Counsel Claim

Likewise, Mr. Viola has never articulated what "alternative theories" of defense Mr. Milano might have, but did not pursue, whether as a result of the Colley investigation or otherwise. Mr. Viola bases his entire argument almost exclusively on the alleged "remarkably similar facts" (ECF # 328, p. 4) in *Couch v. Booker*, 632 F.3d 241 (6th Cir. 2011).[6]

*Couch* is easily distinguishable from the present case. In *Couch*, the defendant was convicted of second-degree murder. The court determined that defense counsel's assistance was ineffective because he failed to obtain a report from the fire department which helped establish a specific, alternative cause of death of the victim. *Id.* The court noted that there was a plausible theory that the victim died of a heat condition exasperated by high levels of alcohol, marijuana, and cocaine in his system, as opposed to the state's theory that the victim died of asphyxia from

---

[6]Mr. Viola claims that *Couch* exhibits "remarkably similar facts" in his Supplemental Motion for New Trial. (ECF # 328). However, in his Reply in support of the Supplemental Motion, Mr. Viola states, " The government is also correct in asserting that *Couch* is, on its facts, dissimilar from the instant case." (ECF #336, p. 2.)

16

inhaled blood that resulted from blunt-force injury to the victim's face caused in part by the defendant. *Id.* at 246.

Even when the factual dissimilarities between *Couch* and the present case are ignored, the legal basis for the holding in *Couch* simply does not apply here. In *Couch*, the defendant asserted a specific, defined theory that his trial counsel did not pursue, *i.e.*, that the victim's death was not causally linked to the defendant's actions.[7] Here, Mr. Viola does not provide even the specter of a specific alternative theory that Mr. Milano neglected to investigate or present, as he must do to prove ineffective assistance under *Strickland*. Instead, Mr. Viola baldly asserts that, because of the pecuniary dispute, his defense was "scaled back." He fails to specifically "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" that are the basis of his ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 690. Accordingly, at a minimum, Mr. Viola has failed to establish the first part of the two-part *Strickland* test.

### d. Mr. Viola Has Not Established An Ineffective Assistance Of Counsel Claim On The Basis Of Eight Alleged Witnesses That Did Not Testify

In *Messina, supra*, the Second Circuit addressed a claim, such as the one Mr. Viola asserts here, that the defendant received ineffective assistance of counsel because his trial counsel failed to call three witnesses in an effort to shorten the trial because of a fee dispute. *Messina*,

---

[7]Similarly, in *Bigelow v. Haviland*, 576 F.3d 284 (6th Cir. 2009), also cited by Mr. Viola, the defendant articulated a specific, alternative defense theory that counsel neglected to pursue. Specifically, the defendant apprised counsel of an alibi witness who placed him 150 miles from the crime scene. The defendant advised his counsel of the witness' whereabouts, and provided the names of other witnesses, requesting his counsel to further investigate the other individuals. Counsel refused. Unlike the defendant in *Bigelow*, Mr. Viola does not assert any specific, ascertained alternative theory of defense or exculpatory evidence that Mr. Milano did not pursue.

131 F.3d 36. There, the court emphasized that the existence of a fee dispute without more does not constitute a conflict of interest. *Id.* at 41. The court also found that, on the record before it, there was no evidence that trial counsel cut corners to shorten the trial. *Id.* Instead, the court held that "[t]he decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *Id.* (quoting *United States v. Nesersian*, 824 F.2d 1294, 1321 (2nd Cir. 1987)). The court found that the trial counsel's tactical decisions to not call witnesses did not support a claim of ineffective assistance of counsel.

In the instant case, Mr. Viola's claim that Mr. Milano neglected to call eight witnesses to shorten the trial as fallout from the pecuniary dispute also fails. There is no evidence to support that Mr. Milano did not subordinate his pecuniary interests and honor his primary professional responsibility to Mr. Viola. Further, there is a dearth of evidence to show that the decision to call or not call witnesses was anything other than a strategic decision made within the bounds of reasonable professional judgment by Mr. Milano. Thus, under the *Strickland* test, Mr. Viola cannot establish that his counsel's performance was deficient. Nor can he show that he was prejudiced. Mr. Viola's Motions for a New Trial must therefore be denied.

**B.     The Decision To Not Have Mr. Viola Testify Does Not Establish Ineffective Assistance of Counsel**

The decision for Mr. Viola to not testify in his own defense at trial does not constitute ineffective assistance of counsel. The Sixth Circuit addressed the identical issue in *United States v. Webber*, 208 F.3d 545 (6th Cir. 2000).

In *Webber*, the court reasoned that the right to testify in one's own defense is secured by the Sixth Amendment. *Id.* at 550. Defense counsel's role is to advise the defendant whether to

take the stand, but it is for the defendant, ultimately, to decide. *Id.* at 551. "Although the ultimate decision whether to testify rests with the defendant, when a tactical decision is made not to have the defendant testify, the defendant's assent is presumed." *Id.* (citations omitted). "This is so because the defendant's attorney is presumed to follow the professional rules of conduct and is 'strongly presumed to have rendered adequate assistance' in carrying out the general duty to 'advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution.'" *Id.*, citing *Strickland*, 466 U.S. at 688-690.

A defendant who wishes to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. *Id.* (citations omitted). "At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.* (citations omitted). "When a defendant does not alert the trial court of the disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id.* (citations omitted).

Here, Mr. Viola did not alert this Court that he wanted to testify, or that there was a disagreement with his trial counsel concerning the decision to testify in his own defense.[8] To the contrary, Mr. Medici testified that, although Mr. Viola wanted to take the stand and "confront

---

[8]"Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Webber*, 208 F.3d at 551 (citations omitted).

these things" – as do most criminal defendants – Mr. Viola professed to his attorneys that he hired counsel to advise him, and he that he trusted their judgment. Mr. Viola cannot now say, after being found guilty by the jury of 35 counts, that he wanted to testify and trial counsel would not allow it.[9]

Consequently, the record shows that Mr. Viola waived his right to testify and agreed with trial counsel's tactical decision for him to not take the witness stand. As such, Mr. Viola's ineffective assistance of counsel claims on the basis of his attorneys' decision to not have him testify, and his Motions for a New Trial, lack merit.

### III. CONCLUSION

For all of the reasons stated herein above, Mr. Viola's Motions for a New Trial are DENIED. **Sentencing in this matter is scheduled for Thursday, December 29 at 11:00 a.m.**

IT IS SO ORDERED.

_____
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATE: December 22, 2011

---

[9] In addition, Mr. Viola has not asserted what information or evidence his testimony would have provided that would have been different from what was already presented at trial.