# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| | ) | CASE NO.   1:08 CR 506 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY L. VIOLA, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Respondent. | ) | |

This matter comes before the Court upon Anthony Viola's Motion to Vacate under 28

U.S.C. § 2255.  (ECF #475).   This pro se petition raises fifteen grounds for relief covering three

areas of contention.  Grounds One and Ten assert actual innocence; Grounds Two, Three,

Thirteen, and Fourteen allege different forms of ineffective assistance of counsel; and Grounds

Four, Five, Six, Seven, Eight, Nine, Eleven, Twelve, and Fifteen allege various forms of

prosecutorial misconduct.  The government filed a Response in Opposition to Mr. Viola's

motion to vacate.  (ECF # 483).   Following the issuance of this Court's Order to Show Cause on

May 27, 2015, Mr. Viola filed a motion to vacate the show cause order (ECF #480) and a motion

to hold the Section 2255 proceedings in abeyance (ECF #481).

The motion to hold the proceedings in abeyance was based on this Court's alleged lack of

jurisdiction while appeals were pending in the Court of Appeals.  As the last appeals have now

been decided, that motion is denied as moot. (ECF # 476, 477, 484).[1]       Further, Mr. Viola's

motion seeking to vacate this Court's Show Cause Order is denied.  The motion, in actuality,

does not challenge the show cause order, but a separate order issued on the same date.  That

order indicates that no case management conference is necessary and that the case is assigned to

the administrative track "as it is expected that this case may be resolved on the pleadings

pursuant of 28 U.S.C. § 2255."  This is a standard order than can be altered if it becomes

apparent through the review of the pleadings that an evidentiary hearing is required.  Under the

circumstances of this case, the administrative track designation was proper.  As set forth below,

Mr. Viola's asserted grounds fail as a matter of law and no evidentiary hearing is warranted.


## FACTUAL AND PROCEDURAL HISTORY

Following a jury trial in 2011, Mr. Viola was convicted of two counts of conspiracy to

commit wire fraud, and thirty-three counts of wire fraud in violation of 18 U.S.C. §§ 371 and

1343.  He was sentenced to sixty months for each of the conspiracy counts and 150 months for

each of the wire fraud counts, with all terms to run concurrently.  Following his conviction, Mr.

Viola was tried on similar charges in state court.  He was acquitted on all state charges.  He

appealed his federal conviction alleging ineffective assistance of counsel and prosecutorial

misconduct.  The Sixth Circuit Court of Appeals affirmed his conviction and sentence. (ECF #

433).

The majority of Mr. Viola's current allegations have already been addressed multiple

_____

[1] The Sixth Circuit affirmed this Court's prior decisions and denied a writ of certiorari
for an en banc hearing.  (ECF #476, 477, 484).  Mr. Viola's petition for a writ of certiorari from
the United States Supreme Court has also been denied.  (ECF #482).

2

times by this Court and the Sixth Circuit Court of Appeals. A listing of all motions, court proceedings, and decisions by this Court and the Court of Appeals that involve the issues raised in Mr. Viola's Motion to Vacate is attached at the end of this opinion. Mr. Viola repeatedly raised claims of ineffective assistance of trial counsel before both courts. This issue was first raised in Mr. Viola's first Motion for a New Trial (ECF #248). He also filed a Supplemental Motion for New Trial addressing this issue and others. (ECF #328). This court appointed new counsel to assist Mr. Viola with the his motion for new trial. At the behest of his newly appointed counsel, the Court approved funds for Mr. Viola to hire an expert to assist in the prosecution of the claim, allowed significant additional discovery, reviewed countless filings, and conducted an evidentiary hearing. (ECF #292, 308, 309, 327, 338). Following nearly eight months of proceedings related to the motion for new trial, the Court found that Mr. Viola did not prove that he was entitled to a new trial. (ECF #338). Specifically the Court found that Mr. Viola received the benefit of a "skillful and zealous representation of counsel" despite the unfavorable outcome at trial. (ECF #338, pg. 2). Further there was no evidence of prejudice from any alleged shortcomings of counsel. The Court of Appeals affirmed the denial of Mr. Viola's motion for new trial. (ECF # 433, 437). Mr. Viola petitioned for an en banc hearing of this appeal, and that petition was denied. (Sixth Circuit Case No.: 12-3112).

Mr. Viola then filed a motion for reconsideration, which included ninety-eight exhibits (ECF #353). This was denied. He later filed two additional motions for new trial under Rule 33. (ECF #380, 434), as well as a multitude of other motions addressing a wide variety of procedural and substantive issues. These were also denied. (ECF #411, 440). The Court of Appeals has affirmed this Court's decisions denying Mr. Viola's motions for new trial; denying his motion

3

for leave to amend his motion for new trial; denying his motion to hold the motion for new trial in abeyance pending a final decision on his initial appeal; denying three motions to vacate, terminate or hold the Restitution Order in abeyance; denying his motion to expand the record; and, denying his motion to unseal records.[2]  (ECF # 464, 476, 484).

This case is now before the Court on Mr. Viola's motion to vacate pursuant to 28 U.S.C. § 2255.

## LEGAL STANDARD

In order to obtain collateral relief "a prisoner must clear a significantly higher hurdle that would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, (1982).  There are only four grounds upon which a request for relief under 28 U.S.C. § 2255 may be granted: "(1) that the sentence was imposed in violation of the Constitution or the laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 426-427 (1962).  Mr. Viola's claims that his conviction and resulting sentence were imposed in violation of the Constitution of the laws of the United States, or are otherwise subject to collateral attack.  The burden of showing that he" is in custody in violation of the Constitution of the United States is on the prisoner." *See, eg., Jones v. Russell*, 396 F.2d 797 (6th Cir. 1968).Section 2255 relief is not available for alleged errors that are not of a constitutional or jurisdictional magnitude or that could have been reached by a direct appeal. *Stone v. Powell*, 428 U.S. 465, 477 (1976).

---

[2]  This denial was not based on the merits of the request, but on the Court's lack of jurisdiction over the matter at the time, due to a pending appeal.

As set forth above, many of the grounds Mr. Viola raises in his Section 2255 motion not only could have been reached by a direct appeal, but were, in fact raised and discredited during the direct appeals process.  Multiple claims center around counsel's alleged failure to obtain investigative reports, failure to call certain witnesses, failure to present sufficient evidence of innocence, failure to present expert testimony and legal theories that contradict the law of the case, failure to present evidence of alleged prosecutorial misconduct, and failure to show that the joint defense agreement prejudiced his representation.  All of these issues have been raised in post-trial motions and through the direct appeals process, and each time, each theory of relief has been disapproved and/or discredited.  Several additional claims could have been raised on direct appeal but Mr. Viola failed to include them in his appeal.  "Once the defendant's chance to appeal has been waived or exhausted. . .  we are entitled to presume that he stands fully and fairly convicted. "  *United States v. Frady*, 456 U.S. 152, 164 (1982).  Nonetheless, this Court will once again address Mr. Viola's contentions that he was actually innocent and that he was deprived of a fair trial due to ineffective assistance of counsel and prosecutorial misconduct.

**ANALYSIS**

I. Actual Innocence

In his first ground for relief, Mr. Viola claims actual innocence based on the assertion that he was convicted under an incorrect legal theory and by false testimony.  A claim of actual innocence, absent a constitutional violation during the trial process that resulted in an unfair trial, is not grounds for relief under 28 U.S.C. § 2255.  Mr. Viola had the opportunity to challenge the

sufficiency of the evidence against him, as well as the validity of the jury instructions provided at trial in an attempt to prove actual innocence on direct appeal. He raised neither of these issues. (ECF #433, 437).  As set forth above Section 2255 relief is not available for alleged errors that could have been reached by a direct appeal.  *Stone v. Powell*, 428 U.S. 465, 477 (1976).  Rather than addressing his alleged innocence on direct appeal, he chose to focus his challenge on this Court's denial of his motion for a new trial.  He limited his arguments to assertions of ineffective assistance of counsel and alleged prosecutorial misconduct.  (ECF #433).   In his motion for new trial, he did imply an argument of actual innocence within his claim for ineffective assistance of counsel by providing evidence of his acquittal in state court on similar charges.  However, as this Court pointed out in its Memorandum Opinion and Order denying that motion, "the mere fact that Mr. Viola, armed with the knowledge that [the strategy used during the federal trial] failed to meet with success, managed an acquittal at his state trial is insufficient to show that [his lawyer's] performance at the federal level was deficient." (ECF #411).  The Sixth Circuit affirmed that decision.  (ECF #433).  An acquittal on state charges is equally insufficient to establish that he was actually innocent of the federal charges.  In short, the fact that Mr. Viola was acquitted on similar charges in state court is not evidence of impropriety or constitutional deficiency at his federal trial, and does not require this Court to vacate his federal conviction.

In Ground Ten, Mr. Viola, alleges that he has uncovered "newly discovered" evidence that supports a finding of actual innocence.  He cites to (1) his acquittal in state court, which was addressed above; (2) evidence of lawsuits against the banks who were the victims in this case; (3) an Ohio Supreme Court investigation into his allegations of prosecutorial misconduct, and, (4) a belief by Dawn Pasela's parents that she had been somehow improperly influenced during

the investigation.  Most of these allegations are repeated in Mr. Viola's claims of prosecutorial misconduct and will be addressed in more detail below.  However, none of this allegedly "newly discovered evidence" provides any evidence of actual innocence.

Mr. Viola presented evidence at his trial and stringently argued that there were no victims in his case, and that the banks were complicit in any irregularities in the mortgage transactions at issue.  However, as the prosecution correctly argued, even if the banks were also guilty of wrongdoing, this did not absolve Mr. Viola of his legal obligations, nor excuse his breaking of the law.  The existence of lawsuits against the banks is not evidence that has any bearing on whether Mr. Viola was innocent of the charges brought against him.   This information is, therefore, neither newly discovered, nor relevant to Mr. Viola's case.

Further, there is no evidence that any alleged actions undertaken by or in connection with Dawn Pasela, nor any allegedly improper influence exerted over Kathryn Clover ever resulted in any evidence that was used against Mr. Viola at trial.  In fact, the evidence Mr. Viola, himself, provided in the form of the investigatory results from the Ohio Supreme Court Disciplinary Counsel shows that there is no evidence of ethical violations on the part of the prosecutors; there is no evidence of improper influence or relationships between the federal prosecutor and these individuals; and, there is no evidence that any of the improprieties alleged by Mr. Viola were known to  the federal prosecutor or affected the federal case against Mr. Viola. (ECf #434-6).  Therefore, Grounds One and Ten, in so far as they allege actual innocence, fail to prove that Mr. Viola is entitled to the requested relief under 28 U.S.C. § 2255.

II.   Ineffective Assistance of Counsel

A defendant seeking to establish ineffective assistance of counsel must satisfy the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   In *Strickland*, the United States Supreme Court held that a defendant must first show that counsel's performance was deficient.  *Id.* at 687.   This means that counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 687-88.   This inquiry must be made in proper context, considering the prevailing circumstances and counsel's perspective at trial, and without relying on the 20-20 vision created by hindsight.  *See, Id.* at 688-89.   In addition, judicial scrutiny of counsel's performance must be "highly deferential."  *Id.* at 689.   The Court should presume that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*   "Counsel may exercise his professional judgment with respect to the viability of certain defenses and evidentiary matters without running afoul of the Sixth Amendment."  *Lewis v. Alexander*, 11 F.3d 1349, 1363-54 (6th Cir. 1993).

In addition to proving deficiency under this highly deferential standard, a defendant must show that the deficient error by counsel was prejudicial to his defense.  *Id.* at 692.   It is not sufficient for the defendant to show "that the errors had some conceivable effect on the outcome of the proceeding" as nearly every conceivable "act or omission of counsel would meet this test."  *Id.* at 693.   Instead, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

A. <u>Grounds Two and Three: Ineffective Assistance Attorneys Kevin Spellacy and Mike Heffernan</u>

Mr. Viola has spent years attempting to convince this Court and the Court of Appeals that his trial counsel was ineffective, to no avail.  Now Mr. Viola is claiming, among other things that the two counsel appointed by the Court to handle his motion for new trial and his sentencing were ineffective.   Mr. Viola claims that Kevin Spellacy and Mike Heffernan were ineffective because they: (1) failed to obtain investigative materials; (2) failed to present proof of Mr. Viola's actual innocence; (3) failed to present proof of adverse effect from conflicts of interest resulting from joint defense at trial; (4) failed to present proof of the government's prosecutorial misconduct; (5) failed to undertake a thorough investigation of the law; and (6) failed to subpoena witnesses to testify regarding seller contributions to buyer's down payment.  (ECF #475).   Many of these  are the same arguments Mr. Viola raised against his trial counsel in his motions for new trial, and in his initial direct appeal to the Sixth Circuit.  (ECF #366).

For reasons set forth in the Court of Appeals decision affirming Mr. Viola's conviction, trial counsel was not ineffective for failing to obtain investigative materials, for failing to call potentially favorable witnesses, or for participating in a joint defense agreement.  These allegations are equally insufficient to establish ineffectiveness of post-trial counsel appointed for the sole purpose of representing Mr. Viola on a motion for new trial and at sentencing.  Mr. Spellacy raised all of the arguments advanced by Mr. Viola, including counsel's alleged failure to obtain investigative materials[3] and present additional witnesses, and attempted to show some

---

[3]The investigator, Ms. Colley, testified at the hearing on Mr. Viola's motion for new trial. She confirmed that Mr. Viola, not his attorney, was her client and she did not release the materials in question to Mr. Viola because he had not paid her for the investigatory work she had performed.  The fact that Ms. Colley was present for the evidentiary hearing and provided information that undermined Mr. Viola's claims for ineffective assistance of counsel proves that

prejudice arising from the joint defense agreement[4] during his  vigorous representation of Mr. Viola.  This Court and the Court of Appeals both found that none of these factors was sufficient to establish ineffective assistance of counsel under the *Strickland* standard.  If these alleged failures were insufficient to create prejudice during his actual trial, they cannot form the basis for ineffectiveness of counsel on a post-trial motion.

 Mr. Viola's allegations of ineffective assistance of counsel against Mr. Spellacy and Mr. Heffernan basically fault these attorneys for failing to present all of the legal and evidentiary support he offered during the entirety of his state court trial within a hearing on a motion for new trial.[5]  Notwithstanding that all such information was referenced and incorporated into the

_____

Mr. Spellacy and Mr. Heffernan, who had no relationship with Ms. Colley, cannot be charged with ineffective assistance for failing to produce the investigatory material at the hearing on Mr. Viola's motion for new trial.  Further, these attorneys were able to obtain the investigative materials prior to the hearing, and they did not impact the Court's decision to deny Mr. Viola's motion for new trial.

 [4]Mr. Spellacy and Mr. Heffernan called four witnesses in support of Mr. Viola's motion for new trial, including an attorney for a co-defendant who testified as to the potential effects of the joint defense agreement. Further, Mr. Spellacy and Mr. Heffernan convinced the Court to approve funding for an expert attorney to testify on Mr. Viola's behalf.  Mr. Viola has not identified any specific witness that he believes should have been called in support of this motion in addition to those four.  He did identify Mr. Rich as a witness that he believed should have been called at trial. However, Attorney Michael Goldberg, an attorney for one of Mr. Viola's co-defendants testified at the hearing that he interviewed Mr. Rich under the joint defense agreement and found that Mr. Rich's lawyer had advised him not to testify.  Therefore, no benefit could have been had by calling Mr. Rich to the stand at Mr. Viola's trial.  (Hearing Transcript at PageID 5201).  In addition, even if Mr. Rich were to have testified that he believed Mr. Viola's acceptance of down payment gifts was legal, as suggested in Mr. Viola's petition, that does make it so.  The jury instructions given at trial have not been challenged, and the jury found that Mr. Viola's actions violated the law.  Mr. Rich's opinion on this ultimate issue is not relevant.  Further, Mr. Viola was convicted based at least in part on actions and omissions not addressed by Mr. Rich's state trial testimony, for example, participating the falsification of loan applications.

 [5]  Mr. Viola argues that it was ineffective for counsel at a hearing on a motion for new trial, not to obtain investigative materials that were in Mr. Viola's own possession or within his

arguments that Mr. Spellacy and Mr. Heffernan made relating to the alleged ineffectiveness of trial counsel, these attorneys were not required, nor would they have been permitted to essentially re-litigate a five week trial using allegedly new evidence and a new theory of the law during a hearing on a motion for new trial.

Finally, Mr. Viola's argues that Mr. Spellacy and Mr. Heffernan should have presented proof of prosecutorial misconduct at the hearing on his motion for new trial. It is well established that a defendant's right to counsel does not give him a right to force his counsel to present every possible non-frivolous argument that could be made on his behalf. *See, Jones v. Barnes*, 463 U.S. 745, 751 (1983). Mr. Viola does not provide any information that would establish a nexus between his allegations of prosecutorial misconduct and his request for new trial on the basis of ineffective assistance of trial counsel. Further, as will be addressed in more detail below, the evidence Mr. Viola now cites in support of his allegations of prosecutorial misconduct is insufficient and often irrelevant, and is in some instances contradicted by other exhibits he himself has provided to the Court. Allegations of prosecutorial misconduct are serious and weighty charges. No defense attorney is required to present the Court with allegations of misconduct that are not clearly supported by competent, credible, and relevant evidence.

There is no evidence that Mr. Spellacy or Mr. Heffernan were ineffective in the counsel they provided Mr. Viola. To the contrary, they vigorously argued Mr. Viola's position to the Court. They made great efforts to pursue new information, identify and present witnesses to support the motion, and otherwise develop the record in an attempt to zealously represent their

---

ability to obtain, and not to put on all proof of his actual innocence through legal theories and fact witnesses. He also faults them for not subpoenaing representatives from IRS and HUD to provide expert opinions on what the law should apply in the case, which would not be allowed in any event as the Court is responsible for determining the law that applies to the case.

client.   Based on their requests, this Court appointed an expert to assist in the prosecution of the claim, allowed significant additional discovery, reviewed countless filings, and conducted an evidentiary hearing.  These attorneys did everything they could have done within the bounds of their own ethical obligations to protect and preserve Mr. Viola's rights.  Mr. Viola's Second and Third Grounds for relief are without merit.

      B.  <u>Ground Thirteen: Ineffective Assistance of Appellate Counsel</u>

Mr. Viola claims that Attorney John Gibbons provided ineffective assistance of counsel on his direct appeal.  However, even if Mr. Viola could establish an error that  Mr. Gibbons erred to a degree that could constitute deficiency under the *Strickland* standard, he cannot show any prejudice from Mr. Gibbons' alleged errors.  Mr. Gibbons timely filed the notice of appeal on Mr. Viola's behalf, and his appointment as Mr. Viola's counsel was vacated two months later. Mr. Viola's appeal continued pro se for approximately two weeks, during which time he filed a pro se motion for new trial.  Mr. Viola contends that Mr. Gibbons failed to file attachments to the motion for new trial; however, Mr. Gibbons no longer represented Mr. Viola by the time this pro se motion was filed.  New counsel, Attorney Michael R. Dezsi, was later appointed to complete the appeal.   Mr. Dezsi corrected any errors allegedly attributable to  Mr. Gibbons and there was, therefore, no prejudice to Mr. Viola from any of these alleged errors.

Mr. Viola, then turned his sights on Mr. Dezsi.  As he has with every attorney who has agreed to represent him thus far in connection with this case, Mr. Viola now accuses Mr. Dezsi of ineffective assistance.   He claims that Mr. Dezsi erred to his prejudice by failing to file a request for bond pending the resolution of the appeal.  This decision by Mr. Dezsi neither deficient nor prejudicial.

Mr. Dezsi did refrain from filing a motion for bond pending resolution of the appeal, apparently recognizing that Mr. Viola did not meet the criteria for release under 18 U.S.C. § 3143(b)(1), and that he would not be able to overcome the presumption of detention.  As noted above, a defendant's right to counsel does not give him a right to force his counsel to present every possible non-frivolous argument that could be made on his behalf, and it certainly does not require an attorney to present motions that have no chance of success.  *See, Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Further, upon Mr. Dezsi's refusal or failure to file the motion for bond Mr. Viola filed his own motion pro se, both with the Court of Appeals and with this Court.  (ECF #383).  This Court and the Court of Appeal both denied the motion, in part because he filed it without counsel, but more importantly because it was without merit.   (ECF # 384; Ct. App. #12-3112: R. 97-1: Order, PageID 1).  Shortly after, Mr. Viola fired his attorney and opted to proceed pro se.  Therefore, any other alleged errors are not attributable to Mr. Dezsi because Mr. Viola was in charge of his own appeal from that point forward.  (Ct. App. #12-3112: R. 101: Motion to Withdraw, PageID 1 at 2).   As set forth above, there is no evidence of inefficiency of appellate counsel and Ground Thirteen provides no basis for the requested relief.

C.  Ground Fourteen:  Joint Defense Agreement

Mr. Viola alleges that he was denied effective assistance of counsel because he suffered from an actual conflict of interest stemming from the implementation of a joint defense agreement during and preceding his federal trial.  The existence of the joint defense agreement was certainly known to Mr. Viola at the time of his trial and therefore could have been raised as an issue on direct appeal.  Mr. Viola did not raise the issue at this time and has, therefore, waived its presentation.  Further, prior to trial, Mr. Viola waived any potential or actual conflict of

13

interest by agreeing to proceed under the joint defense agreement.  There is no way to know whether this agreement may have worked to Mr. Viola's detriment or benefit.   Either way, however, he knowingly accepted the risk of any conflict of interest in exchange for the benefit he believed he would gain from consolidating the costs and efforts of all of the defense lawyers who were party to the joint defense agreement.   As noted by Mr. Viola, Mr. Bennett, the federal prosecutor raised the issue of potential conflict more than once prior to trial in order to ensure that Mr. Viola and the other defendants were fully aware of the risks they were undertaking. However, armed with that knowledge and fully cognizant of Mr. Bennett's concern, Mr. Viola and the other defendants agreed to waive the potential conflict and proceed under the agreement. Mr. Viola cannot now be heard to say that his trial was unfair on the basis of this agreement that he entered into with full awareness of the potential risks and benefits to the defense of his case. Ground Fourteen provides no basis for relief under 28 U.S.C. § 2255.


III.  Prosecutorial Misconduct

Mr. Viola lists nine separate grounds asserting alleged prosecutorial misconduct.

A.  Ground Four: Spying on Defense (Dawn Pasela)

Mr. Viola alleges that Mark Bennett, the federal prosecutor, and Dan Kasaris, the state prosecutor, directed Mortgage Fraud Task Force Office Manager Dawn Pasela to "wear a wire, invade my defense and secretly record a series of uncounseled and post-indictment interviews." He further alleges that the task force asked Ms. Pasela to make a contribution to Mr. Viola's defense fund so that they could track the fund's bank account and harass other contributors and supporters.

14

Even assuming these allegations could be proven, they would not create a constitutional defect in Mr. Viola's federal trial.  There is no dispute that Ms. Pasela did not testify at Mr. Viola's federal trial, nor were any recordings she allegedly made introduced at that trial. Further, even if the prosecutors were to have tracked the bank account holding Mr. Viola's defense funds, there is no evidence that this had any impact whatsoever on his trial.  There is no allegation, let alone proof, that any witness refused to testify for Mr. Viola at his federal trial because they had been discovered to be Viola supporters and harassed by the prosecution.  Nor is there any allegation, let alone evidence, that Mr. Viola was prevented from using any funds collected for his defense fund in furtherance of his defense at trial.  Therefore, even if true, these allegations are not relevant in determining the constitutionality of Mr. Viola's federal trial. Further, Mr. Viola has presented no evidence whatsoever that would implicate Mr. Bennett, the federal prosecutor, in connection with any allegedly improper communications with Ms. Pasela.

Mr. Viola submitted evidence in support of this same claim as part of his Rule 33 Motion for New Trial. (ECF #434-6).   The evidence he provided at that time contradicts his claims here. Mr. Viola submitted a letter from the Supreme Court of Ohio's Disciplinary Counsel purporting to support his accusation of prosecutorial misconduct.  However, this letter actually contradicts Mr. Viola's own recitation of the events underlying his assertions and undermines any claim that his trial was negatively impacted by the alleged acts.

The Ohio State Supreme Court conducted an investigation of the same allegations of alleged misconduct presented in Ground Four in April of 2013.  In connection with that investigation, the Supreme Court of Ohio's Disciplinary Counsel interviewed Mr. Kasaris, the state prosecutor.  There is no indication that Mr. Bennett, the federal prosecutor, was in any way

15

connected to these events.  The Disciplinary Counsel reported that Mr. Kasaris had provided

documentation to support the following findings:

> In 2009 [Mr. Viola] held a public fundraiser which [he] advertised and solicited
> donations on your website. [His] attorney was present and it was a public event
> held at a public restaurant, an event in which anyone could attend.  The [state]
> prosecutor's office decided to send Dawn Pasella [sic], a contract employee, to
> the event to investigate what was being said.  It could not be ascertained as to
> what was recorded as there was too much background noise.  Consequently Ms.
> Pasella's [sic] attendance was of no value to the [state] prosecutor nor was it any
> detriment to you.

(ECF #434-6).

This evidence, submitted by Mr. Viola himself, confirms that any information Ms. Pasela

may have gathered on behalf of the task force was gathered at the behest of the state prosecutor

and not the federal prosecutor in the instant case.  Further, it confirms that no misconduct or

ethical violation occurred.  The prosecutor's office has a right to investigate a defendant, and to

appear in public places, and listen to and/or record whatever statements are made in public

meetings.  Further, Mr. Viola's attorney was apparently present at the time of any  recording of

Mr. Viola's statements.  Finally, this information confirms that no information obtained through

this endeavor was used against Mr. Viola at his state or federal trial either through the

introduction of a recording or through the testimony of Ms. Pasela.  For these reasons, Mr.

Viola's Fourth Ground for Relief fails to establish any right to relief under 28 U.S.C. §2255.

   B. Ground Five: Using Allegedly Perjured Testimony in Prosecution

In his Fifth Ground for relief, Mr. Viola alleges that the federal prosecutor knowingly

presented the perjured testimony of Kathryn Clover during his prosecution.  He claims that

during his state court trial,  under questioning by Mr. Viola,  Ms. Clover admitted to lying in

federal court. However, a review of the transcript shows that Ms. Clover never admitted to lying in her testimony against Mr. Viola during his federal prosecution. All that Ms. Clover addressed in her exchange with Mr. Viola during the state court trial was that within her own written plea agreement, she pled guilty to a count of conspiracy with "Viola's new mortgage company Transcontinental Lending Group," even though she did not think Mr. Viola owned that branch of the company. This statement, and the plea agreement in which it was contained had no effect whatsoever on Mr. Viola, his trial, or his conviction. Further, although she agreed to plea to the counts listed in her plea agreement, the agreement was drafted by the prosecution based on their best information at the time, and did not constitute an attestation by Ms. Clover as to the truth of each minor detail.

Further, her state court testimony did not "recant" or "disprove" the statement that she conspired with Transcontinental and/or with Mr. Viola as he suggests in his petition. Upon questioning, Ms. Clover merely clarified that, to her knowledge, Mr. Viola did not own "that branch" of Transcontinental. Finally, even if Ms. Clover's state court testimony had proved that she committed perjury, clearly Mr. Viola would have known the truth of the matter during the federal trial. "[A] petitioner is not entitled to habeas corpus relief on a claim of knowing use of perjured testimony where the falsity of the testimony complained of was known to the defense." *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D. N.Y Feb. 13, 1991).

In addition to the issue relating to Mr. Viola's ownership of Transcontinental, Mr. Viola claims that Ms. Clover lied when she testified that he "asked Noah Block to make up income for an unemployed borrower," and when she claimed Mr. Viola told her not to obtain home inspections." Again, the truth about these matters would have been known to the defense at the

17

time of his trial, and, therefore, cannot be the basis for habeas corpus relief. *Id*.  Further, Mr. Viola has offered absolutely no evidence that these statements were lies.  The trial testimony he cites from the state court trial does not explicitly contradict Ms. Clover's testimony.[6]

Further, even if it were utterly inconsistent with Ms. Clover's federal testimony, it is not up to the Court to re-weigh the credibility of evidence on a petition for habeus corpus relief. Finally, Mr. Viola has presented no evidence whatsoever that Mr. Bennett or anyone else on the prosecution team knew that Ms. Clover's testimony on these issues was false. In fact, as Mr. Viola points out,  Mr. Bennett, himself, challenged Ms. Clover's credibility in front of the jury, even though she was the prosecution's witness,  when he had reason to believe that she was not telling the truth during her testimony.   This is not evidence of prosecutorial misconduct, but of prosecutorial integrity.

In the end, a jury in the federal court heard all of the testimony presented by the prosecution and all of the testimony and arguments of the defense and they alone were tasked with assessing the weight and credibility of the evidence.  The jury found sufficient credible evidence was presented at that trial to convict Mr. Viola of the charges beyond a reasonable doubt.   Absent a constitutional violation at trial, the Court cannot and should not second guess the jury's determination.   Mr. Viola has offered no argument or evidence that would challenge the fairness or constitutionality of proceedings leading up to the jury's decision.  Therefore, no relief may be granted based on the assertions in Mr. Viola's Fifth Ground for relief.

--------

[6] Ms. Clover allegedly testified that Mr. Viola told her not to obtain home inspections. This statement does not identify how many times this occurred, whether she followed that direction, or whether that order was in violation of company policy or other requirements. Mr. Caputo allegedly testified that the company required inspections on all properties; he did not say they were always performed. Ms. Clover did not specifically deny that she had inspections performed routinely, which is all Mr. Whittington allegedly testified to.

C. <u>Ground Six:  Hiding The FBI 302 Interview with Steve Newcomb</u>

Mr. Viola claims that federal prosecutors possessed an FBI 302 interview summary of their interview with witness Steve Newcomb.  Mr. Newcomb testified in both the federal and state trials.  Many of the allegations raised in Ground Six are centered around allegedly false claims made by the state prosecutor at the state trial.  The state prosecutor's alleged failure to produce, or re-produce the 302 summary have no bearing on the constitutionality of the federal court proceedings.

Mr. Viola's claim that the 302 summary was not produced in the federal trial is not supported by the evidence he submitted in support of his petition.  Most of the state court transcript he provides has no relevance to the federal court proceedings, but during sidebar Mr. Kasaris indicated that the 302 summary was not provided during the state case because the FBI forgot to save the original and had handed its only copy over to Michael Goldberg.  Michael Goldberg was the attorney for one of  Mr. Viola's co-defendants during the federal trial and was one of the lawyers under the joint defense agreement.  This evidence would suggest, then, that Mr. Viola's defense team did, in fact, have access to the 302 summary at the federal trial, even if it was not re-produced during the state court proceedings.

Further, Mr. Viola's claim that the 302 summary was withheld from his defense counsel during discovery in the federal case, even if true, does not establish a violation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963)..  To establish such a violation, a defendant must show "that the Government suppressed evidence, that such evidence was favorable to the defense, and that the suppressed evidence was material."  *United States v. Graham*, 484 F.3d 413, 417; *accord United States v. Warshak*, 631 F.3d 266, 300 (6th Cir. 2010).  "*Brady* violations have three

19

elements: '[1] The evidence at issue must be affordable to the accused, either because it is exculpatory, or because it is impeaching; [2] the evidence must have been suppressed by the State, either willfully or inadvertently[;] and, [3] prejudice must have ensued." *United States v. Hanna*, 661 F.3d 271, 296 (6th Cir. 2011)(quoting *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).)  Evidence is only exculpatory if it is material and is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceedings would have been different." *Hanna*, 662 F.3d at 296 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Mr. Viola raised this alleged *Brady* violation in his Rule 33 Motion for new trial, after having obtained the information allegedly withheld during his federal prosecution, but did not include the document as evidence in support of the motion.  (ECF # 434, pg. 18) That motion was denied by this Court, and the denial was affirmed by the Court of Appeals.  (ECF # 440, 464).  He now claims that the document contained information showing that Steve Newcomb had informed the FBI that "(a) account executives could 'waive' any underwriting conditions and make exceptions to underwriting guidelines, including allowing 'no money down' loans; and (b) that Argent did not ask for nor accept the 'seller side' of closing statements."  (ECF #475-1).

Mr. Viola has made no showing of how this information would have been exculpatory or material in the context of his federal prosecution.  He has made no argument that it was relevant to the elements of his convictions or that it could have been used for impeachment purposes. Nor has he demonstrated that possession of this document would have affected his defense strategy, or the eventual outcome of the trial in any discernible way.  Therefore, Mr. Viola is entitled to no relief under 28 U.S.C. § 2255 based on the allegations and information contained

20

in his Sixth Ground for relief.

    D.  <u>Ground Seven: Sham Prosecution</u>

Mr. Viola claims, in essence, that he should not have been tried twice, in federal court and in state court, for essentially the same conduct.  He alleges that the dual prosecution was unconstitutional under the "sham prosecution" exception to the dual sovereignty doctrine.  It is well established that "state and federal authorities, as independent sovereigns, generally may independently prosecute the same person for similar conduct without offending the double-jeopardy bar."  *United States v. Djoumessi*, 538 F.3d 547, 550 (6th Cir. 2008), *cert. denied*, 555 U.S. 1119 (2009).  "[P]rosecution in both state and federal court for offenses that would otherwise constitute the same 'offense' under the Fifth Amendment if tried successively in the same forum[] is constitutional under the dual sovereignty doctrine."  *United States v. Deitz*, 577 F.3d 672, 686 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1720 (2010).

A very limited exception to this doctrine has been suggested in the case of a "sham prosecution," wherein "a state prosecution for the same crime" follows after "the defendant ha[s] been acquitted in federal court," and the federal investigators provide their evidence to the state prosecutor in a second attempt to obtain a conviction.  *United States v. Mardis*, 600 F.3d 693, 696-697 (6th Cir.), cert. denied, 131 S. Ct. 365 (2010); *cf., Bartkus v. Illinois*, 359 U.S. 121, 123-124 (1959).   Mere cooperation between sovereigns in the investigation, timing, and successive prosecutions of an individual for related offenses does not constitute a "sham prosecution" and does not violate the dual sovereignty doctrine.  *See, Id.* at 697.

Mr. Viola's federal prosecution did not follow a prior conviction, and in fact did not follow any other prosecution for similar conduct.  A defendant cannot be found to be a victim of

double jeopardy during the first prosecution he faces.  If there were any question of a double jeopardy issue or "sham prosecution," it would affect the second prosecution in state court (in which Mr. Viola was acquitted), not the federal prosecution at issue in this case.  Further, even the state court could be found to be a "sham prosecution" in this instance because Mr. Viola was not acquitted of the federal charges.  Therefore, his successive prosecution cannot be viewed a means by which the federal prosecutor is attempting a second bite at the apple in order to obtain a conviction.   Finally, the Sixth Circuit has made clear that mere cooperation between sovereigns during investigation and trial planning, which is all Mr. Viola has alleged or can allege, is not sufficient to establish a "sham prosecution." *Id.*   For these reasons, Mr. Viola's Seventh Ground for relief is without merit.

     E.  Ground Eight: Brady Violations

Mr. Viola claims that state and federal prosecutors hid exculpatory evidence from him; "never revealed the role of Paul Tomko;" never provided recordings made by Dawn Pasela despite using information from these recordings against him to obtain an ex parte court order; ordered the FBI to collect his trash and harass his supporters; secretly recorded pretrials and judicial statements; coached witnesses how to testify; read confidential attorney-client communications from his office computers and disseminated that material in discovery; and, forged signatures on evidence logs.  In addition, Mr. Viola alleges that state prosecutor Dan Kasaris asked other witnesses to spy on Mr. Viola.

First and foremost, any allegations made against Mr. Kasaris, the state prosecutor,[7] have

---

[7]  Mr. Viola alleges that Mr. Kasaris, the state prosecutor wrote letters in support of Ms. Clover's admission to law school, and that he had an inappropriate relationship with her.  He does not allege that this took place before Ms. Clover's testimony in his federal case, nor that Mr. Bennett, the federal prosecutor was aware of any of these alleged acts.  Mr. Viola further

no bearing on either the propriety of the federal prosecutor's actions, or the fairness of Mr.

Viola's federal trial.  With regard to the allegations against the federal prosecutor, Mr. Bennett,

Mr. Viola has claimed that his actions violate the government's disclosure requirements under

*Brady*.  As set forth above, *Brady* requires the government to disclose to the defendant any

information that is both material and exculpatory.  *See Graham*, 484 F.3d at 417.  Although Mr.

Viola complains information was improperly obtained by the federal government, in many cases

he does not even allege that this evidence was suppressed or hidden from him.[8]  In those

---

alleges that Mr. Kasaris asked a state witness, Alex D'Amato to wear a wire.  He does not allege
that this occurred prior to the federal trial, that Mr. D'Amato agreed to wear the wire, or that any
evidence exculpatory to Mr. Viola was obtained.  Further, Mr. Viola clearly was provided with
this information at some point.  He does not allege that it was suppressed, but simply asks that it
be added to the record.  Finally, Mr. Viola references Matt Fairfield interviews but does not
identify who conducted the interviews or whether they were in connection with the state or
federal trial.  He does not allege that any information from these interviews was suppressed but
only that Mr. Fairfield apparently believed Mr. Viola was innocent.  Expression of an unfounded
belief in a defendant's innocence does not constitute *Brady* material, even if it had been
suppressed.

[8]  There is no allegation that any specific information about Paul Tomko, known to the
government prior to trial, was kept from Mr. Viola.  Mr. Viola alleges not that information
concerning Mr. Tomko was suppressed, but that "Prosecutors never revealed [his] role."  Mr.
Viola does not explain what "role" he is referring to.  Mr. Tomko was a witness at trial, which
Mr. Viola and his defense knew.  The fact that Mr. Tomko was later indicted, more than three
years after Mr. Viola's trial was complete, on unrelated charges (identity theft and credit card
fraud) has no relevance whatsoever to Mr. Viola's trial, or the validity of his conviction.
    In addition, the petition cites interviews of Matt Fairfield, without identifying when they
occurred, or alleging that information from those interviews was withheld. Allegations that the
FBI went through his trash fail to allege that any material or exculpatory information was
obtained or withheld.  The claim that pre-trials and judicial statements were secretly recorded
also fails to allege that these alleged recordings contained any material or exculpatory evidence
or that the information contained in the recordings was suppressed.  In fact, if the recordings
were of pre-trials and other judicial statements, these would have taken place in proceedings
where Mr. Viola's counsel was present.
    Mr. Viola also contends that a March 2010 interview with Nick Myles should be
transcribed and added to the court record.  He does not assert that the information obtained in the
interview was suppressed, or that it was material or exculpatory.  This does not state a *Brady*
claim (or any other claim for relief).  The Court does not transcribe all discovery materials and

instance where he does allege suppression, he does not provide any evidence or argument that the allegedly suppressed information was either material or exculpatory.

Mr. Viola does not identify any information that was withheld from the Burton files during the federal investigation. He claims that the files were split between the state and federal investigations to hide information from him during the federal trial. Any information that was within the state's control, and unknown to the federal prosecutor, cannot be the basis for a *Brady* violation in the federal case. Further, now that both trials have been completed, Mr. Viola should have had access to all information in both of those files. In fact, he implicitly acknowledged that he is now in possession of this information by citing to these files as "newly discovered evidence" in support of his Rule 33 Motion. (ECF #434). Even so, he has not identified any specific information contained in the state files that was unavailable during the federal trial, and was both material and exculpatory.

With regard to Mr. Gofman's 302 interview and the FBI tapes of Uri Gofman and Rick Wagner that Mr. Viola alleges were withheld during the federal prosecution, Mr. Viola claims that Mr. Gofman asserted his innocence during his FBI interview and that this statement is material and exculpatory as to Mr. Viola. However, Mr. Gofman's assertion of innocence was known to Mr. Viola prior to and during his federal trial. Mr. Gofman was a co-defendant in Mr. Viola's case and he maintained his innocence and denied the existence of the conspiracy up to and throughout the trial in this case. Further, there is no allegation that Mr. Viola's, and his

---

any discovery that is not introduced at trial or otherwise docketed as part of the briefing process is not a part of the Court record.

Finally, Mr. Viola contends that confidential attorney-client communications were seized, copied and provided to him in discovery. Mr. Viola cannot claim a *Brady* violation because he was provided information. There is no allegation that any known information was withheld in connection with this incident.

attorney, were unaware of the contents of Mr. Gofman's interview with the FBI. These co-defendants had a joint defense agreement and worked together in defense of their charges. Mr. Viola has not alleged, nor would it be rational to believe that Mr. Gofman would have withheld exculpatory information revealed in his FBI interview from the joint defense team, or from Mr. Viola, himself. Mr. Viola does not identify any statement by Rick Wagner on the FBI tapes that would have been material or exculpatory to his defense. The allegations relating to Mr. Newcomb's Interview Summary have already been addressed under Ground Six.

The Mortgage ID lawsuit cited by Mr. Viola in his petition does not fit within a *Brady* claim as it references information that didn't exist until after Mr. Viola's trial. In fact, he submitted this information as evidence of "newly discovered evidence" in support of his Rule 33 Motion for New Trial. (ECF #434). Even if this information was known to the government and withheld from Mr. Viola, it is neither material nor exculpatory. Mr. Viola contends that lawsuits and settlements involving the lenders who were the identified victims of his crime show that the banks themselves were guilty of wrongdoing and, therefore, could not be victims. He further contends that his conviction cannot stand in the absence of a victim with clean hands. This argument was addressed above in the analysis of his Tenth Ground for relief. Mr. Viola made this argument to the jury in his federal trial. A large part of his defense theory is that the banks were not victims and therefore he could not be guilty of a crime. This defense was fully developed and yet failed to convince the jury. In addition, it is legally incorrect. Even if the banks were guilty of wrongdoing of their own, it does not provide a legal excuse for Mr. Viola's crimes.

Finally, Mr. Viola claims that this Court entered an ex parte order that he believes was

influenced by secret wired conversations taped by Dawn Pasela and used by the prosecution against him.  The propriety of any request made to Ms. Pasela to tape Mr. Viola's public support rallies has been addressed above.  The docket number cited by Mr. Viola of an "ex parte order" is actually a public document wherein the Court granted a request by U.S. Pretrial Services and Probation to modify the terms of Mr. Viola's bond.  This was based on information presented to the Court that showed Mr. Viola had been directly or indirectly in contact with and attempted to harass potential witnesses in the case against him.  Further, even if it had been based on "secret recordings" by Ms. Pasela, which is was not, there is nothing to suggest that those recordings contained exculpatory information material to the charges against Mr. Viola.  In fact, as the Order added restrictions to Mr. Viola's bond, it would suggest the information it was based on was, in fact, detrimental to Mr. Viola.  There is no *Brady* issue raised by this allegations.  Mr. Viola has failed to show any Brady violation through the information and allegations contained in his Eight Ground for relief.

      F.  Ground Nine: Vindictive Prosecution

Mr. Viola alleges that he was indicted three times as punishment for exercising a protected statutory or constitutional right, in violation of the Due Process Clause of the United States Constitution.  The Government's response accurately explains why Mr. Viola's claim does not satisfy the criteria for a selective prosecution claim under the Equal Protection Clause as established by the Sixth Circuit in United States v. Hazel, 696 F.2d 473 (6th Cir. 1983), and in so far as Mr. Viola's claim could be read to be a selective prosecution case, the Court adopts the government's argument as if re-written herein.

It does not appear, however, that Mr. Viola necessarily intended to raise an equal

protection claim through his use of the term "vindictive prosecution."  His claim sounds more like a claim of retaliatory prosecution.  This claim also fails, however.  Mr. Viola again attempts to fuse the acts of the state and federal prosecutors.  He relies on action taken by the state prosecutor to attempt to show some sort of retroactive effect on the federal prosecution.  This is untenable.  The state indictment and prosecution cannot provide evidence of unfairness or unconstitutionality at his federal trial.  Therefore, Mr. Viola was indicted once by the federal government on December 10, 2008, prior to any activity that he claims spurred retaliatory action.  That indictment was superceded on May 6, 2009.  This superceding indictment affected all of the Defendants, not just Mr. Viola.  The superceding indictment replaced the original indictment and did not constitute a new prosecution against Mr. Viola.  Further, Mr. Viola's petition does not identify when he started the website that allegedly spurred the government's retaliation and does not identify when the investigation leading to the superceding indictment was initiated or completed.  In short, Mr. Viola provides no evidence of a causal relationship between his superceding indictment and his creation of the website "Tony Told Me To Do It" and the publication of his defenses and/or criticisms of the government's case against him.   As such, his Ninth Ground for relief must also be denied.

      G. <u>Ground Eleven: Destruction of Evidence</u>

      Mr. Viola claims that the Mortgage Fraud Task Force, "acting on the government's behalf" lost or destroyed evidence, including evidence contained on lost computers, and forged evidence logs.  This claim refers primarily to Mr. Viola's claims that computers that had been turned over to the County Prosecutor by Anthony Capuozzo and Nicholas Myles were lost or destroyed.  Pursuant to *Arizona v. Young blood*, 488 U.S. 51, 58 (1988), "[unless a criminal

27

defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process."   Mr. Viola contends that the record in this matter "contains clear proof of bad faith by prosecutors" and that they should, therefore, be liable for violation of his due process rights.

Mr. Viola misrepresents the record.  As set forth above, Mr. Viola has not been able to cite anything in the record that suggests, let alone proves, that the federal prosecutors in this case acted, at any point in time, in bad faith.  Absent such a showing, there can be no recovery under *Young blood*.  Further, Mr. Viola offers no evidence that any evidence was lost or destroyed, nor that the information contained in the allegedly missing evidence was potentially useful to his defense.  With regard to the computer allegedly turned over by Mr. Myles, a hearing was held on July 1, 2010 wherein the parties presented testimony showing that there was no evidence any computer had been turned over to Cuyahoga County law enforcement by Mr. Myles or his counsel and consequently there was no evidence to suggest that any computers were missing or any connected information was being withheld from the defense.  (ECF# 173).

Mr. Viola points to testimony of Anthony Capuozzo, who testified that "Family Title computers were turned over in 2006."  (ECF #475-1).  However, there is no testimony or other evidence indicating that the computers, or the information contained in, was lost or destroyed.  In fact, the docket in this case shows that all information contained on Mr. Capuozzo's computers was, in fact, turned over to the defense prior to trial.[9]  There is no indication in the record, or in Mr. Viola's motion that would suggest the information contained on those computers was useful

---

[9] The defendants filed a motion to compel production of information obtained from the computers of Mr. Capuozzo and Mr. Myles.  (ECF #123).  After many meetings with the Court and the federal prosecutor, the information on Mr. Capuozzo's computer was provided to the defense in an acceptable manner, and this issue was resolved.  (ECF #151, #153).

to the defense.

Mr. Viola also points to the affidavits of Mr. and Mrs. Pasela, as "proof" that investigators forged evidence logs.  (ECF # 475- 2).  However, even if these statements could overcome the bar on heresay evidence, they do provide any evidence that evidence useful to  Mr. Viola was lost or destroyed.  They simply allege that "some computers in the office had disappeared, and [Dawn Pasela] couldn't find out why or where they went.  The affidavit does not identify what computers had disappeared, or what steps, if any, Dawn Pasela had taken to ascertain their whereabouts.  They do not account for the possibility that the computers were returned to their owners or that the physical computers were destroyed after the information on the computers had already been preserved.  The affidavits provide no evidence that any information contained on the missing computers had been lost or destroyed.

Further, although these affidavits maintain that Dawn Pasela "was concerned that things were being taken from the files and not returned" and that "some employees had signed her name when they took the files" there is no evidence that anything taken was of use to Mr. Viola's defense, or that these "things" had been lost or destroyed.  At best it might be evidence that these "things" were not where Ms. Pasela expected them to be, when she looked for them. Finally, the affidavits do not establish who may have taken the allegedly missing "things" from the files or signed Ms. Pasela's name.  In fact, according to the affidavits, file boxes were stacked in hallways making them accessible to "almost anyone." There is no indication any files were lost or destroyed based in bad faith or by order of the federal prosecutor.  For these reasons, Mr. Viola's Eleventh Ground for relief also fails.

H.  <u>Ground Twelve: Witness Tampering and Obstruction of Justice</u>

Mr. Viola claims that his federal trial was unconstitutional because two "investigators" attempted to intimidate and threaten Dawn Pasela to keep her from testifying at his trial.   The evidence Mr. Viola has submitted to support this claim suggests that the alleged intimidation and threats occurred after the federal trial was already complete.  Her parents attested that after the alleged threats and intimidation, Dawn Pasela was so frightened that the "investigator" would return, she moved in with her parents for "ten or more days" then moved back home.  Shortly after, on April 25, 2012, she was found dead of acute alcohol intoxication.  This was approximately one year after Mr. Viola's federal trial had already been complete.   Therefore, even if the allegations of threats made against Ms. Pasela were true, they would have no correlation to or impact on Mr. Viola's federal trial.   Mr. Viola is, therefore, entitled to no relief based on the accusations contained in his Twelfth Ground for relief.

I.  <u>Ground Fifteen: Giglio Violation</u>

Finally, Mr. Viola contends that the federal trial should be overturned because "prosecutors" failed to disclose that Ms. Clover was allowed to work inside the prosecutor's office, allowed to review files related to other Defendant's transactions, allowed to sit in meetings with government witnesses, and was provided assistance with her law school scholarships and letters of recommendation.  Mr. Viola does not assert that Mr. Bennett or any other federal prosecutor was a party to any of these alleged agreements or benefits, and all of the evidence he has submitted in support of his allegations suggests that any such arrangements  or inducements that did exist were between Ms. Clover and Mr. Kasaris, the state prosecutor.

All inducements offered to Ms. Clover by the federal prosecutor were detailed in her

30

written plea agreement and were addressed in open court. The jury in Mr. Viola's federal trial were well aware that Ms. Clover entered into a plea agreement with the federal government and that she would face a reduced sentence on account of that agreement. They were also made aware that Ms. Clover was a cooperating witness who had reviewed and agreed to explain much of the documentation used against Mr. Viola and the other defendants on trial. Any agreements or benefits Ms. Clover obtained from the state prosecutor are irrelevant to Mr. Viola's federal prosecution. Mr. Viola has failed to provide any evidence or assertion that would show the federal government failed to fulfill all of its disclosure obligations under Giglio v. United States, 405 U.S. 150 (1972).

IV. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented a petition under 28 U.S.C. §2255. That section provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required

under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Although the statute specifies that a certificate of appealability must be issued by a circuit justice or judge, the Sixth Circuit is one of three circuits that has held that this language includes both circuit and district judges.  See, *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063 (6th Cir. 1997).  The Federal Rules of Appellate Procedure have explicitly included district judges under this authority as well.  Fed. App. R. P. 22(b)(1).   This Court, after reviewing the standards and conditions required for the issuance of a certificate of appealability, and having thoroughly reviewed the arguments, both procedural and factual in support of Mr. Viola's motion to vacate, determines that there is no substantial showing of the denial of a constitutional right, and there is no reasonable basis upon which to debate the Court's procedural rulings.  Therefore, the Court denies the certificate of appealability.

Therefore, for the reasons set forth above, Mr. Viola's Motion to Vacate under 28 U.S.C. § 2255,  (ECF #475), is DENIED and no certificate of appealability will be issued.  IT IS SO ORDERED.

  _/s/ Donald C. Nugent_____
DONALD C. NUGENT
United States District Judge

DATED:   July 24, 2015

32

## APPENDIX

The issues raised in Mr. Viola's Motion to Vacate Sentence have been previously raised and addressed in the following motions, court proceedings, and **decisions,** before this Court and on appeal:

| | | |
|---|---|---|
| ECF #123 | Joint Motion to Compel/Sanctions | June 8, 2010 |
| ECF #124 | Corrected Joint Motion to Compel | June 8, 2010 |
| ECF #173 | Hearing on Motion to Compel | July 1, 2010 |
| ECF #151 | Minutes- Agreement on Motion to Compel | September 10, 2010 |
| ECF #152 | **Order Denying Motion to Compel** (ECF #124) | September 10, 2010 |
| ECF #155 | Motion to Compel | November 10, 2010 |
| ECF # 157 | Motion to Compel | November 12, 2010 |
| ECF #165 | Motion to Compel | November 18, 2010 |
| ECF #180 | Brief in Support of Motions to Compel | January 10, 2011 |
| ECF #182 | Hearing on Motions to Compel | January11, 2011 |
| ECF #182 | **Denial of Motion to Compel**/ **Counsel Resolving** (ECF # 155, 157, 165, 180) | January 11, 2011 |
| ECF #186 | Motion to Compel | February 11, 2011 |
| ECF #189 | Motion for Oral Hearing | February 16, 2011 |
| ECF non/doc | **Order Granting Oral Hearing** (ECF #189) | February 22, 2011 |
| ECF # 248 | Rule 33 Motion for New Trial | April, 6, 2011 |

| | | |
|---|---|---|
| ECF #249 | Motion to Amend Motion for New Trial | April 6, 2011 |
| ECF #255 | **Order Granting Motion to Amend** (ECF #249) | April 8, 2011 |
| ECF #276 | Motion for Order to Show Case/Oral Hrg | April 25, 2011 |
| ECF #277 | Supplemental Motion for New Trial | April 26, 2011 |
| ECF #284 | Mot. for Ext. Of time to file Add. Info. | May 2, 2011 |
| ECF #285 | Supplemental Motion for New Trial | May 2, 2011 |
| ECF #289 | Supplemental Motion for New Trial | May 9, 2011 |
| ECF #328 | Supplemental Motion for New Trial | November 22, 2011 |
| ECF #338 | Hearing on Motion for New Trial | December 15, 2011 |
| ECF #343 | **Order Denying Motion for New Trial** (ECF #248, 277, 285, 289, 328) | December 22, 2011 |
| ECF #353 | Motion for Reconsideration | January 3, 2012 |
| ECF #354 355 356 357 358 | Exhibits to Motion for Reconsideration | January 3, 2012 |
| ECF #366 | Notice of Appeal of Judgment (ECF # 363) | January 25, 2012 |
| ECF #369 | Motion for Discovery | February 28, 2012 |
| ECF #380 | Motion for New Trial (Rule 33) | May 16, 2012 |
| ECF #381 | **Order Denying Motion for Discovery** (ECF #369) | May 17, 2012 |
| ECF #383 | Motion for Bond Pending Appeal | May 24, 2012 |
| ECF #384 | **Order Denying Motion for Bond** (ECF #383) | May 31, 2012 |

34

| ECF #411 | **Order Denying Motion for New Trial** (ECF #380) | July 25, 2012 |
| ECF #412 | **Appeal Order Granting Mr. Dezsi's Motion to Withdraw as Counsel** | August 1, 2012 |
| ECF #415 | **Appeal Order Referring Request to Enlarge/Supplement Record** | September 12, 2012 |
| ECF #420 | **Appeal Order Denying Motion to Enlarge/Supplement Record** | March 7, 2013 |
| ECF #433 | **Information Copy- Court of Appeals Affirming Judgment and Denial of Motion for New Trial** (ECF #366, 343) | November 7, 2013 |
| Ct. App. 12-3112<br><br>Doc. # 251 | Petition for En Banc review -<br><br>Affirmance of Denial of Motion for New Trial | November 25, 2013 |
| Ct. App. 12-3112 Doc. 258 | **Court of Appeals Order Denying Petition for En Banc Review** | March 10, 2014 |
| ECF #434 | Rule 33 Motion for New Trial | March 10, 2014 |
| ECF #435 | Motion to Amend ECF #434 | March 10, 2014 |
| ECF #436 | Motion to Hold Restitution in Abeyance on Grounds Banks are not Vicitms | March 10, 2014 |
| ECF #437 | **Mandate Affirming Judgment and**<br><br>**Denial of Motion for New Trial (ECF #366, 343)** | March 18, 2014 |
| ECF #440 | **Order Denying Motion for New Trial** (ECF #434) | March 25, 2014 |
| ECF #441 | **Order Denying Motion to Amend** (ECF #435) | March 25, 2014 |
| ECF #442 | Notice of Appeal (ECF #440, 441) | April 10, 2014 |

35

| | | |
|---|---|---|
| ECF #445 | Motion to Unseal Records Relating to Conflict of Interest and Government Intrusion into Right to Counsel | April 14, 2014 |
| ECF #449 | Motion for Ext. of Time to Reply to Government's Response | May 30, 2014 |
| ECF #450 | **Order Granting Motion for Ext. of Time** | June 4, 2014 |
| ECF #451 | Motion to Terminate Restitution on Grounds Banks are not Victims | June 4, 2014 |
| ECF #453 | **Order Denying Motion to Unseal Records** (ECF #445) | June 20, 2014 |
| ECF #454 | Notice of Appeal (ECF #453) | June 27, 2014 |
| ECF #456 | Motion to Expand Record | October 17, 2014 |
| ECF #457 | Motion to Obtain Public Records | October 17, 2014 |
| ECF #458 | **Order Denying Motion to Hold Restitution in Abeyance** (ECF # 436) | October 21, 2014 |
| ECF # 459 | **Order Denying Motion to Terminate Restitution** (ECF #451) | October 21, 2014 |
| ECF #460 | **Order Denying Motion for Public Records** (ECF #457) | October 23, 2014 |
| ECF #463 | Notice of Appeal of Denials on Restitution Motions (ECF #458, 459) | November 3, 2014 |
| ECF #464 | **Information Copy Court of Appeals Affirming Denials of Motion for New Trial, Motion to Amend, and Motion to Unseal Records** (ECF #440, 441, 442, 453, 454) | November 4, 2014 |
| Ct. App. 14-3348 and 14-3624 Docs. 27 and 13 | Petition of En Banc Review | November 12, 2014 |
| ECF #466 | **Order Denying Motion to Expand** | November 24, 2014 |

**Record**

| ECF #467 | Notice of Appeal of Denial of Motion to Expand Record (ECF #466) | December 4, 2014 |
|---|---|---|
| ECF #470 | Motion to Compel Production of FBI Records | December 31, 2014 |
| ECF #473 | **Order Denying Motion to Compel** (ECF #470) | February 27, 2015 |
| ECF #474 | Motion for Reconsideration | March 13, 2015 |
| Ct. App. 14-3348 and 14-3624 Docs. 40 and 26 | **Denial of Petition for En Banc Review on Affirmance of Denials of Motion for New Trial, Motion to Amend, and Motion to Unseal Record** (ECF # 440, 441, 442, 453, 545, 464) | April 1, 2015 |
| ECF #476 | **Mandate Affirming Denials of Motion for New Trial, Motion to Amend, and Motion to Unseal Records** (ECF #440, 441, 442, 453, 454) | April 9, 2015 |
| ECF #477 | Petition for Writ of Certiorari to US Supreme Court - on Denial of Motion for New Trial, etc. (ECF #434, 464) | May 13, 2015 |
| ECF #482 | **Appeal Order - US Supreme Court Denying Petition for Certiorari** (ECF #434, 464) | June 11, 2015 |
| ECF #484 | **Information Copy: Court of Appeals Affirming Denial of Motions on Restitution and Denial of Motion to Expand Record** (ECF #458, 459, 463, 466, 467) | July 2, 2015 |
| Ct. App. 14-4139 Doc. 35 | Petition for En Banc Review of Affirmance of Denial of Motions on Restitution and Denial of Motion to Expand Record (ECF #458, 459, 463, | July 16, 2015 |

466, 467)