**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:08 CR 506** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **ANTHONY VIOLA,** | ) | |
| | ) | |
| **Defendant.** | ) | **ORDER** |

This matter is before the Court on the Motion for Relief from Governmental Collections Action in Contravention of Court's Restitution Judgment filed by Defendant, Anthony Viola. (Docket #580.)

## I. Factual and Procedural Background

### A. Mr. Viola's Conviction and Sentence.

On April 1, 2011, Mr. Viola was convicted by a jury on 35 of 36 counts arising from a mortgage fraud scheme. On January 5, 2012, Mr. Viola was sentenced to a term of 60 months on counts one and two, to run concurrent, and one hundred fifty months on the remaining counts to run concurrent, along with three years of supervised release. (Docket #s 363 and 378.) Mr. Viola was order to pay a $3,500.00 special assessment immediately, and his Judgment included

restitution of at least $1,256,528.49, subject to supplementation. (Id.) On July 11, 2013, the total restitution award was supplemented, with the total restitution assessed at $2,649,865.00. (Docket #428 at p.3.) On January 13, 2022, Mr. Viola was released from Bureau of Prisons custody.

**1. Financial Windfall Condition.**

At the time of sentencing, Mr. Viola was advised that as a special condition of supervised release, he was subject to a Financial Windfall Condition, which required him to "apply all monies received from income tax refunds, lottery winnings, judgments and/or any other anticipated or unexpected financial gains to the outstanding court-ordered financial obligation." (Docket #363 at p. 4.) Aside from the $3,500.00 special assessment which was due immediately, the Court deferred entry of a payment schedule until 60 days after his release from incarceration. (Id. at p. 6.)

**2. Payment Agreements.**

On September 23, 2022, the Court modified the terms of Mr. Viola's supervised release to include a requirement that he pay $50.00 per month toward his restitution debt of $2,649,865.00. (Docket #560.) No other conditions of supervised release were modified.

On October 31, 2024, Mr. Viola signed an Agreement with the United States Attorney's Office, agreeing to make restitution payments of "no less than $25.00 per month." (Docket #584-1.) As part of that Agreement, the United States stated that it reserved the right to place the defendant in the Treasury Offset Program pursuant to 26 U.S.C. 6402(d). The Agreement explained, "This program reaches all government funds payable to you and includes but is not limited to federal income tax refunds and social security payments." (Docket #584-1.)

**3. Treasury Offset Program Tax Refund Collections.**

In February 2023, April 2024 and April 2025, Mr. Viola's income tax refunds were collected and applied to his restitution obligation through the Treasury Offset Program. (Docket #s 580-3 at pp. 3-4 and 580-4 at p. 2; Docket #584 at p. 3.) Mr. Viola attaches Notices that he received from the Department of Treasury in 2024 and 2025, informing him that his tax refunds had been applied to his outstanding restitution debt pursuant to the Treasury Offset Program and directing Mr. Viola to contact the U.S. Attorney for the Northern District of Ohio's Financial Litigation Unit with any disputes or questions regarding the Treasury Offset Program collection.

While neither party has provided the Court with documentation of the exact date upon which Mr. Viola was originally placed in the Treasury Offset Program, the Government maintains that Mr. Viola's criminal judgment debt was submitted to the Treasury Offset Program in November 2012. (Docket #584 at p. 2.) The Notices received by Mr. Viola include a Treasury Offset Program Account # OHN 2012A28825001, suggesting that Mr. Viola was in fact placed in the Treasury Offset Program in 2012.

As of July 24, 2026, Mr. Viola had paid a total of $4,456.20 toward his criminal judgment; $575.00 toward his special assessment (the balance of which expired unpaid in 2017 pursuant to 18 U.S.C. § 3013(c)); and $3,881.20 toward his restitution debt. (Docket #584 at p. 2.) As of July 24, 2026, Mr. Viola still owed restitution in the amount of $2,508,403.23.

**B. Mr. Viola's Motion for Relief.**

On June 3, 2026, Mr. Viola filed his Motion for Relief, asking the Court for a declaration that the collection of his tax refunds through the Treasury Offset Program is in contravention of the Court's restitution Judgment; an order compelling the Government to return the tax refunds

that were taken by offset; and, an order requiring the Government to produce an accounting of his joint and several restitution obligation to include payments made by any joint and several obligors. Mr. Viola argues that because he made consistent payments pursuant to a payment plan, his debt was not delinquent and the Government cannot use the Treasury Offset Program in an effort to satisfy his restitution obligation.

The Government filed a Response in Opposition on July 24, 2025. (Docket #584). Mr. Viola filed a Reply Brief on August 10, 2026. (Docket #586.)

## II. Discussion.

### A. The Treasury Offset Program.

A restitution order acts as a lien in favor of the Government. Aside from specific exceptions, the Government may enforce a restitution order "by all other available and reasonable means." *United States v. Gallion*, 504 F. App'x 373, 376-77 (6th Cir. 2012) (quoting 18 U.S.C. § 3664(m)(1)(A)(ii)). One means of enforcing a restitution order is the Treasury Offset Program. *See United States v. Campbell*, 245 F. App'x 505, 507 (6th Cir. 2007). Under that program, "any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset." *Johnson v. U.S. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008) (per curiam). All funds payable by the United States to an individual who owes certain federal debts are subject to offset unless exempted by statute. *See Astrue v. Ratliff*, 560 U.S. 586, 589 (2010).

"TOP offsets are not part of any court payment schedule, but are instead part of the government's collection activities. There is no statute that prohibits the United States from

conducting such collection activity once the restitution order is imposed, even where there is no payment default or where the court has established a payment schedule." *United States v. Weissenbach*, Case No. 3:08 CR 172-1, 2010 U.S. Dist. LEXIS 63330, *4 (W.D. N.C. June 2, 2010). "Even where the judge has deferred payment, the United States still has the right to immediate restitution." (*Id.* at *5.) (citing *United States v. James*, 312 F. Supp. 2d 802, 806-07 (E.D. Va. 2004) ("While a schedule of $150 a month was put in place in the event restitution was not paid immediately, the existence of this schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied. Court-imposed payment schedules are merely one means available to enforce a restitution judgment"); *United States v. Hanhardt*, 353 F. Supp. 2d 957 (N.D. Ill. 2004)). *See also United States v. Ridley*, 13 CR 30084, 2023 U.S. Dist. LEXIS 127002, *2 (S.D. Ill. July 19, 2023 ("restitution payment schedule reflects the minimum obligation of a debtor; it is not a limitation on the Government's enforcement powers."); *Greene v. United States*, 124 Fed. Cl. 636, 644 (2015) ("[T]he establishment of a payment schedule does not preclude the government from undertaking collection activity, such as referral of debt to the TOP for offset.").

**B. Notification.**

The Treasury Offset Program requires that an agency notify the debtor of the agency's intent to use the offset procedure and give the debtor "at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable." Section 3720A(b)(2). Once the agency has complied with the Treasury Offset Program notice and review requirements, the agency must certify to the Department of Treasury that the debt is eligible to be offset and that all due process protections have been met. If properly certified, the Department of Treasury must

administratively offset the debt. 31 U.S.C. § 3716(c)(1)(A); 31 CFR 285.2. The provisions require the agency to notify the Secretary of the Treasury at least once each year of the amount of such debt. However, there is no requirement that the debtor be given annual notice of the intent to intercept a federal income tax refund and no requirement that the debtor have 60 days each year to contest setoff. *In re Huff*, Case No. 05-212, 343 B.R. 136, 141-144 (W.D. Penn. 2006).

**III. Conclusion.**

As set forth above, the existence of a payment schedule does not preclude the Government from pursuing other avenues to ensure that Mr. Viola's restitution obligation is satisfied, including the collection of his tax refunds. Even if Mr. Viola was or is current on his payments under the previous and most recent agreed upon payment schedule, Mr. Viola's entire restitution obligation was subject to referral to the Treasury Offset Program and the collection of his tax returns was lawful.

The Government was required to give Mr. Viola notice in 2012 that he was being placed in the Treasury Offset Program, or demonstrate that a reasonable attempt to notify was made. There is no requirement that Mr. Viola be given annual notice of the intent to intercept his Federal income tax refund, and no requirement that he have 60 days each year to contest setoff. While it is unlikely that the Government did not attempt to notify Mr. Viola of the referral given the fact that the Government was required to certify to the Department of Treasury that the debt was eligible for collection by offset and that all due process protections were met, a copy of that notice has not been provided for the Court. Regardless, even if Mr. Viola did not receive the 60-day Treasury Offset Program notice in 2012 while he was incarcerated, the lack of notice constitutes harmless error.

Mr. Viola was on Supervised Release when his tax refunds were intercepted in 2023 and 2024. One of the Special Conditions of Supervision imposed at the time Mr. Viola was sentenced was a Financial Windfall Condition which required Mr. Viola to apply all moneys received from income tax refunds to his outstanding court-ordered financial obligation. Mr. Viola was required to apply those tax refunds to his outstanding restitution obligation as a condition of his supervised release regardless of whether his debt had been referred to the Treasury Offset Program and regardless of whether he received notice of the referral. Further, as stated above, all of Mr. Viola's tax refunds are subject to collection under the Treasury Offset Program regardless of the payments he has made and Mr. Viola has failed to assert that the collection of his tax returns in 2023, 2024 and 2025 was otherwise unlawful or that he would have challenged collection pursuant to the Treasury Offset Program on some other basis.

For the foregoing reasons, the Motion for Relief filed by Mr. Viola (Docket #580) is hereby DENIED, with the exception that the Government shall provide Mr. Viola with an accounting of the outstanding joint and several restitution obligation.

IT IS SO ORDERED.

Donald C. Nugent

DONALD C. NUGENT
United States District Judge

DATED: October 26, 2026